# IN THE COURT OF APPEALS OF IOWA

No. 16-1175
Filed September 13, 2017

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**ROMAN JACOB MONCIVAIZ,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Story County, Timothy J. Finn, Judge.

A defendant challenges his judgment and sentence for robbery in the first degree and assault with the intent to inflict serious injury. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Richard Bennett (until withdrawal) and Kevin Cmelik, Assistant Attorneys General, for appellee.

Considered by Vogel, P.J., Potterfield, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**VOGEL, Presiding Judge.**

Roman Moncivaiz appeals from his convictions for robbery in the first degree, in violation of Iowa Code sections 711.1(1)(b) and 711.2 (2014), and assault with intent to inflict serious injury, in violation of Iowa Code sections 708.1(2) and 708.2(1). Moncivaiz asserts two claims on appeal: (1) there is insufficient evidence supporting his convictions; and (2) trial counsel was ineffective for failing to object to improper closing argument. We find there was sufficient evidence to support the jury's verdict. We further find counsel did not breach an essential duty, thus counsel is not ineffective for failing to object to the closing argument. Therefore, we affirm.

## I. Background Facts and Proceedings

On October 19, 2014, Bryan Cox returned to his apartment between approximately 1:30 a.m. and 2:30 a.m. after being out with friends. As he approached his apartment, he saw Moncivaiz and another man, later identified as Anthony Hinton, standing near the front door. Moncivaiz owed Cox money from a previous drug transaction, so Cox invited him into his apartment. He asked Hinton to wait in the vestibule of the building. Cox then locked the door after entering his apartment with Moncivaiz. Soon after Moncivaiz and Cox entered the apartment, Hinton kicked in the door of the unit demanding, "Where is it!?" Hinton attacked Cox, and Moncivaiz "balled up his fist" and joined in the attack.

A neighbor found Cox later in the day after noticing blood on the apartment building hallway wall and Cox's door standing slightly ajar. She

observed wounds on Cox including a stab-wound on Cox's head. The next day, Cox's mother visited the apartment and observed multiple stab-wounds on Cox.

After being transported and evaluated at the local hospital, Cox was transferred to a Des Moines hospital and treated for wounds on his back, shoulder, and neck. Cox's diaphragm was repaired, and a portion of his colon was removed. He also underwent brain surgery to mend a skull penetration. In all, he was hospitalized for three weeks. Cox made several statements shortly after the attack to various individuals, including his neighbor, his mother, and the police. The statements either conveyed that "two guys" or "they" had attacked and stabbed him, or more specifically mentioned "Rome" and "a black male."

On October 8, 2015, the State charged Moncivaiz with attempt to commit murder and robbery in the first degree.[1] All charges were tried before a jury. He was found guilty of robbery in the first degree and assault with the intent to inflict serious injury, a lesser-included offense of attempted murder, and he was sentenced to indeterminate prison terms of twenty-five years on the robbery conviction and two years on the assault conviction. The sentences were ordered to be served consecutively. Moncivaiz now appeals.

## II. Standard of Review

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). We review claims of ineffective assistance of counsel de novo. *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004).

---

[1] Charges were amended to allege joint criminal conduct; however, a jury instruction was not given on this theory. *See* Iowa Code § 703.2.

### III. Sufficiency of the Evidence

Monciviaz and the State agree the claims raised on appeal have not been preserved due to the failure of trial counsel to specify them in the motion in arrest of judgment and motion for new trial. However, Moncivaiz challenges the sufficiency of the evidence in the context of an ineffective-assistance-of-counsel claim. Such claims are an exception to the traditional error-preservation rules. *See State v. Fountain*, 786 N.W.2d 260, 262–63 (Iowa 2010). As the State notes, if there is sufficient evidence to support the verdicts, counsel cannot be found to be ineffective for failing to make a more specific argument in his motion for judgment of acquittal. *Truesdell*, 679 N.W.2d at 616 ("A claim of ineffective assistance of trial counsel based on the failure of counsel to raise a claim of insufficient evidence to support a conviction is a matter that normally can be decided on direct appeal. Clearly, if the record in this case fails to reveal substantial evidence to support the convictions, counsel was ineffective for failing to properly raise the issue and prejudice resulted. On the other hand, if the record reveals substantial evidence, counsel's failure to raise the claim of error could not be prejudicial." (citation omitted)).

Moncivaiz claims the State was only able to produce evidence he was present at Cox's apartment, rather than any evidence he "had the intent to commit a theft, he was armed with a dangerous weapon, and he inflicted or attempted to inflict serious injury." In addition, he claims the proof was lacking as to whether he "had the intent to inflict a serious injury" or whether he "aided and abetted another in the commission of the crimes against Bryan Cox." He claims the record shows Hinton burst into the apartment alone and he looked away

when Hinton first attacked Cox. Additionally, Cox testified Hinton stabbed him, not Moncivaiz. Moncivaiz testified his blood was present on Cox's clothing only because he had been at Cox's apartment earlier while smoking methamphetamine, when an unrelated cut on his finger began to bleed. Consequently, Moncivaiz claims a rational trier of fact could not find him guilty of first-degree robbery or assault with intent to inflict serious injury beyond a reasonable doubt.

If substantial evidence supports the verdict, we will affirm. *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005). Evidence is substantial if it would convince a reasonable trier of fact the defendant is guilty beyond a reasonable doubt. *Id.* We view the "evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.*

Under Iowa Code section 711.2, "[a] person commits robbery in the first degree when, while perpetrating a robbery, the person purposely inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon."

A robbery is defined as:

> 1. A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
>     a. Commits an assault upon another.
>     b. Threatens another with or purposely puts another in fear of immediate serious injury.
>     c. Threatens to commit immediately any forcible felony.
> 2. It is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen.

Iowa Code § 711.1.

To be guilty of the crime of assault with the intent to inflict serious injury, the State must prove:

> 2. A person commits an assault when, without justification, the person does any of the following:
>> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
>> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.
>> c. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

Iowa Code § 708.1(2). In addition, the assault must be committed with "the intent to inflict serious injury upon another." *Id.* § 702(1).

Alternatively, a person concerned in the commission of a public offense, whether that person directly commits the act constituting the offense or aids and abets its commission, shall be charged, tried, and punished as a principal. *Id.* § 703.1. "To secure a conviction based on aiding and abetting, the State must introduce substantial proof to show that the accused "'assented to or lent countenance and approval to' the criminal act." *State v. Allen*, 633 N.W.2d 752, 754 (Iowa 2001) (citation omitted). "Mere nearness to, or presence at, the scene of the crime, without more evidence, is not 'aiding and abetting.'" *Id.* (citation omitted). Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting." *Id.* at 754–55 (citing Iowa Crim. Jury Instructions 200.8 (1988)).

Although Moncivaiz testified he was not at Cox's apartment during the time of the attack, his cell phone "pinged" off a tower near Cox's apartment, placing him in the neighborhood at the time the robbery was committed.

Furthermore, the State presented evidence that Moncivaiz's blood was found on Cox's clothing, that Moncivaiz had a "cut" on his finger, and that Cox's cell phone was later found during a search of Moncivaiz's home. Finally, Cox testified "Rome" and "a black male" did this, and drugs and money were missing from his apartment. The fact that Moncivaiz owed Cox money, Cox identified him as an attacker, Moncivaiz's blood was found at the crime scene, Moncivaiz later sought treatment for a cut finger, and Moncivaiz was found with Cox's property, all indicate Moncivaiz participated in the robbery and assault.

Moncivaiz also asserts on appeal, even if he were present during the robbery and assault, the State failed to prove he had the specific intent to either commit a theft or to cause a serious injury. We disagree. Cox testified as to his drug connection with Moncivaiz and to Monciviaz owing Cox money for drugs. He also testified Moncivaiz and Hinton were waiting at his apartment in the early morning hours of October 19, 2014. Moncivaiz knew Cox; Hinton did not. Moncivaiz knew where Cox lived and knew he kept drugs and large sums of money at his apartment from his drug dealing. Further, Moncivaiz knew, as Cox's friend, he could gain access to Cox's apartment easier than Hinton. The jury was free to take this evidence to find Moncivaiz had the specific intent to commit a theft.

Once Moncivaiz and Cox were inside, Hinton "kicked in" the locked door, asking, "Where is it? Where is it at?" and soon began punching Cox and throwing him around. Cox then looked over at Moncivaiz, who "looked down, looked up, and then he balled up his fist like that; and then, like, just approached me, too. All I remember we all ended up fighting in that room, and then I'm pretty

sure they knocked me out." With Moncivaiz participating in the attack, the jury could reasonably determine Moncivaiz had the specific intent to cause Cox serious injury.

Moreover, there is also sufficient evidence that Moncivaiz acted as an aider and abettor. Moncivaiz was not only present, but he actively participated in the assault which produced multiple injuries to Cox, including stab wounds. Cox also testified his cash was missing after the two left the scene. Moreover, Moncivaiz was found with Cox's property—a cell phone—during a later search of his residence. This evidence is substantial proof Moncivaiz assented to, or lent countenance and approval to, the robbery and assault and was not merely present at the scene. *See id.* There was sufficient evidence for a reasonable trier of fact to conclude, beyond a reasonable doubt, Moncivaiz robbed and assaulted Cox, as delineated in Iowa Code sections 703.1, 708.1(2), 711.1, 711.2. Because sufficient evidence supports the verdicts, counsel was not ineffective for failing to make more specific arguments in his motion for judgment of acquittal. Therefore, we affirm Moncivaiz's convictions.

## IV. Closing Argument

Moncivaiz next asserts trial counsel was ineffective for failing to object to improper closing argument made by the prosecutor.

A defendant may raise an ineffective-assistance claim on direct appeal if the record is adequate to address the claim. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We may either decide the record is adequate and rule on the merits, or we may choose to preserve the claim for postconviction proceedings. *Id.* We review ineffective-assistance claims de novo. *Id.* To succeed on this

claim, the defendant must show: first, counsel breached an essential duty, and second, he was prejudiced by counsel's failure. *Id.*

In order to determine whether counsel was ineffective in failing to object to alleged prosecutorial misconduct, we must first determine whether prosecutorial misconduct occurred. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). To do so, we consider the following factors:

> (1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instruction or other curative measures; and (5) the extent to which the defense invited the misconduct.

*Id.* (citations omitted).

A prosecutor "is entitled to some latitude during closing argument in analyzing the evidence admitted in the trial." *Id.* at 877 (citing *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975)). While a prosecutor is afforded the latitude to draw conclusions and argue permissible inferences derived from the evidence in closing arguments, a prosecutor cannot create evidence. *State v. Shanahan*, 712 N.W.2d 121, 139 (Iowa 2006). Additionally, "counsel is precluded from using argument to vouch personally as to a defendant's guilt or a witness's credibility." *See State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983).

Specifically, Moncivaiz argues the prosecutor personally vouched for the credibility of Cox, which was an essential part of the State's prosecution. During closing argument the prosecutor stated:

> He came in and like I said, ladies and gentlemen, he told you the good, the bad, and the ugly. So why would he make this up? He wouldn't. He had to lay it all out there for you. He had to tell you about his life. All of the horrible things, how his mom found him almost dead in his apartment. How he's been to drug treatment.

> He sat here and told you how he cares about his friends, and you'll see it in his text messages. You heard it from [a witness]. He's one of the most caring, nicest people she's ever met. He would even come up to you and apologize to you even if he did nothing wrong. That's the kind of person Bryan Cox is.
>
> So why would he make this up? The simplest answer is, ladies and gentlemen, he didn't. Roman Moncivaiz and Anthony Hinton went over that night to rob him for his drugs and his money.

This closing argument was not improper, nor was the prosecutor guilty of misconduct. The record establishes the prosecutor's closing argument consisted of conclusions and inferences drawn from the evidence. The witness testified Cox "cares about everybody," he "checks with people even if they have done something wrong," he "does not hold grudges," and he "wants to mend relationships when he has made someone upset." Further, Cox openly testified about his drug use, addiction, and dealing. Cox admitted he is currently seeing a therapist and has entered drug treatment. The prosecutor highlighted Cox's positive character traits established by testimony and Cox's consistent descriptions of positive and negative habits he possesses. The prosecutor encouraged the jury to use their common sense and experience in evaluating Cox's credibility based on the evidence presented. Since the prosecutor did not inject personal opinion into closing arguments and since the closing argument related to specific evidence presented at trial, the prosecutor did not commit prosecutorial misconduct. Since no prosecutorial misconduct occurred, counsel did not breach an essential duty. Therefore, counsel was not ineffective for failing to object to closing argument. *See Graves*, 668 N.W.2d at 881 ("Trial counsel has no duty to raise an issue that has no merit.").

**V. Conclusion**

Because we conclude there was sufficient evidence to support the jury's verdict and counsel did not breach an essential duty by failing to object to the State's closing argument, we affirm Moncivaiz's convictions.

**AFFIRMED.**